UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT GOLDWARE,<br><br>Plaintiff,<br><br>v.<br><br>WARDEN CHARLES ELLIS, et al.,<br><br>Defendants. | Civil Action No.  22-1979 (FLW)<br><br>MEMORANDUM & ORDER |

Plaintiff Robert Goldware, a pretrial detainee currently incarcerated at Mercer County Correctional Center ("MCCC"), has filed a Complaint, alleging violations of his civil rights pursuant to 42 U.S.C. § 1983, and an application to proceed in forma pauperis ("IFP application").  As this time, the Court will grant the IFP application.

Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit.  *See* 28 U.S.C. § 1915(e)(2)(B); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  To survive screening, Plaintiff's Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations do not suffice.  *See id.*  Because Plaintiff is proceeding pro se, the Court construes his allegations liberally.  *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

Plaintiff alleges that on January 29, 2022, while he was incarcerated at MCCC, he was assaulted by several inmates (one of whom had a weapon).  Complaint at 6.  Plaintiff suffered a broken tooth, a contusion, and a deep laceration to his chin, which required medical attention.  *Id.*

1

Correctional staff escorted Plaintiff to the medical department, and a nurse examined Plaintiff and advised correctional staff that Plaintiff should be taken to the hospital immediately because the laceration would not stop bleeding and Plaintiff needed stitches. *Id.* Plaintiff alleges that staff did not follow the inmate handbook and facility protocols for transporting inmates for outside medical attention. *Id.* Instead, Plaintiff waited in the medical area for five hours and staff denied his requests to change his wound dressing. *Id.* Plaintiff also alleges that no one was charged with assaulting Plaintiff. *Id.*

Plaintiff alleges that Warden Charles Ellis "hired highly unprofessional medical staff[.]" Complaint at 3(b). Plaintiff also alleges that "CFG medical staff" did not adhere to the MCCC handbook or protocols and denied Plaintiff medical attention for his laceration. *See id.* at 3(c). The Complaint also lists Brian Hughes as a Defendant, but there are no allegations against this Defendant. The caption of the Complaint also lists MCCC and CFG.

The Court construes Plaintiff to assert violations of his constitutional rights pursuant to 42 U.S.C. § 1983. To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federally secured right. *See, e.g., Moore v. Tartler*, 986 F. 2d 682, 685 (3d Cir. 1983).

The Court construes Plaintiff to allege Defendants denied him adequate medical care in violation of the Fourteenth Amendment.[1] The Constitution requires prison officials to provide

---

[1] The Court does not construe Plaintiff to allege a failure to protect claim against any of the Defendant in connection with the assault. Courts have found that prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). (internal quotations omitted). For a failure to protect claim against a prison official, a plaintiff must provide facts showing the following: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) the prison official acted with deliberate indifference to that substantial risk of serious harm; and (3) the official's deliberate indifference

basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). As a pretrial detainee, Plaintiff's right to adequate medical care arises under the Due Process Clause of the Fourteenth Amendment.[2] *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003). In order to state a claim for relief, Plaintiff must show a "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *See Natale*, 318 F.3d at 582 (citation omitted).

From the outset, the Court dismisses MCCC, as this entity is not a proper Defendant in a § 1983 action. *See Crooks v. Passaic Cnty. Sheriff's Department/Jail*, 2007 WL 923330, at *2 (D.N.J. Mar. 26, 2007) (collecting cases). The § 1983 claims against MCCC are dismissed with prejudice.

To the extent Plaintiff is attempting to allege § 1983 claims against the County of Mercer, he fails to state a claim for relief. The liability of a municipality under 42 U.S.C. § 1983 is governed by *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Municipalities may not be found vicariously liable under the doctrine of *respondeat superior* for claims that their employees violated an individual's civil rights. *Ed. of Cnty. Comm'rs of Bryan Cnty. v. Brown*,

---

caused harm. *See Farmer*, 511 U.S. at 834; *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997); *see also Travillion v. Wetzel*, 765 F. App'x 785, 790 (3d Cir. 2019). Here, Plaintiff's allegations focus on the failure to provide him medical care after the assault, and he does not allege any facts to suggest that the assault was the result of prison officials' deliberate indifference. Plaintiff is free to raise this claim with supporting facts should he submit an Amended Complaint. The Court also does not construe Plaintiff to raise any state law claims.

[2] The Eighth Amendment's "cruel and unusual punishments" clause applies when an inmate has been convicted of and sentenced for his crimes. *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), abrogated on other grounds by *Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020). The Fourteenth Amendment's Due Process Clause entitles an unsentenced inmate "at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment." *Id.* (citing *Fuentes v. Wagner*, 206 F.3d 335, 341-42 (3d Cir. 2000)).

520 U.S. 397, 403 (1997).  Rather, a plaintiff seeking to hold a municipality liable for a civil rights violation caused by a municipal employee must allege facts showing that the municipality's policy or custom is the "moving force" behind the constitutional violation. *Monell*, 436 U.S. at 694; *see also Bryan Cnty.*, 520 U.S. at 403; *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000).  *Monell* liability can be predicated upon the theory that the municipality's failure to supervise or train its employees "reflect[s] a deliberate or conscious choice by policymaking officials, such that one could call it the [municipality's] policy or custom." *Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) ). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011); *Pharaoh v. Dewees*, No. CV 14-3116, 2016 WL 2593842, at *4 (E.D. Pa. May 4, 2016).

Here, the Complaint is devoid of factual allegations showing that the County of Mercer's policy or custom caused any violation of Plaintiff's constitutional right to adequate medical treatment.  Because the Complaint fails to state how a custom or policy of the County of Mercer caused the violation of Plaintiff's constitutional rights, it fails to state a § 1983 claim against the County of Mercer.  The *Monell* claims are, therefore, dismissed <u>without prejudice</u> against the County of Mercer.

Similarly, to hold CFG liable, Plaintiff must provide facts showing that CFG had a relevant policy or custom and that policy or custom was the moving force behind the constitutional violation. *See, e.g., Natale*, 318 F.3d at 583–84 (citing *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)).  Plaintiff provides no allegations

4

that a policy or custom of CFG, which provides medical services at MCCC, caused the violation of his right to medical care.  The Complaint is dismissed without prejudice as to CFG.

The Court next addresses the liability of Ellis and Hughes.  To be held liable under § 1983, a supervisor must have had "personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (civil rights defendants may not be held liable under *respondeat superior* theory of liability).  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), reversed on other grounds by *Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

"[T]o hold a supervisor liable...for their deficient policies...the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).  Deliberate indifference in the supervisory context may be demonstrated by "(i) showing that a supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiffs', or (ii)

by showing that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support the finding that the two-part test is met." *Beers-Capitol*, 256 F.3d 136-37 (citing *Sample*, 885 F.2d at 1099).

Here, Plaintiff's allegation that Warden Ellis "hired" unprofessional medical staff is insufficient to show his personal involvement in the alleged wrongs. Indeed, Plaintiff appears to allege that Defendant Ellis should be held liable on the basis of respondeat superior alone. Plaintiff provides no allegations regarding Defendant Hughes' personal involvement in the alleged wrongs. For these reasons, Plaintiff fails to state a claim for relief against Ellis or Hughes, and the inadequate medical care claims against Ellis and Hughes are dismissed <u>without prejudice</u> for failure to state a claim for relief.

Finally, Plaintiff may not proceed generally against "CFG medical staff" and must identify individually the Defendants who violated his right to medical care. To the extent Plaintiff does not know the names of the individual Defendants, civil rights claims may be asserted against fictitious defendants pursuant to New Jersey's fictitious defendant rule. *See* N.J.R. 4:26–4. "The fictitious party rule may be used only if the plaintiff exercised due diligence to ascertain the defendant's true name before and after filing the complaint." *DeRienzo v. Harvard Industries, Inc.*, 357 F.3d 348, 353 (3d Cir. 2004) (citing *Farrell v. Votator Div. of Chemetron Corp.*, 62 N.J. 111, 299 A.2d 394, 396 (1973)). The fictitious name designation also must have appended to it "an appropriate description sufficient to identify" the defendant. *Id.* (quoting *Rutkowski v. Liberty Mut. Ins. Co.*, 209 N.J. Super. 140, 506 A.2d 1302, 1306–07 (1986)). Here, Plaintiff does not provide descriptions sufficient to identify any of medical and/or

correctional staff who allegedly violated his right to adequate medical care. As such, the § 1983 claims for inadequate medical care are dismissed without prejudice as to the CFG medical staff.

For the reasons explained herein, the Complaint is dismissed with prejudice as to MCCC and without prejudice as to the remaining individual and entity Defendants. The Court will permit Plaintiff to submit an Amended Complaint to the extent he can provide facts to cure the deficiencies in his claims. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (holding that in civil rights cases, the Court must allow amendment, unless doing so would be inequitable or futile). Because it is conceivable that Plaintiff can cure the deficiencies in the claims against Ellis, Hughes, the County of Mercer, CFG, and/or the individual CFG staff members, Plaintiff may submit an Amended Complaint and a request to reopen this matter within 45 days of the date of this Memorandum and Order.[3]

**IT IS, THEREFORE**, on this  6th  day of July 2022,

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* is **GRANTED** (ECF No. 1-1); and it is further

**ORDERED** that the Complaint shall be filed; and it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1915(b) and for purposes of account deduction only, the Clerk shall serve a copy of this Order by regular mail upon the Attorney General of the State of New Jersey and the Administrator of Mercer County Correctional Center; and it is further

---

[3] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. *See West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165, 171 (3d Cir. 2013)(collecting cases). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. *Id.*

**ORDERED** that Plaintiff is assessed a filing fee of $350.00 and shall pay the entire filing fee in the manner set forth in this Order pursuant to 28 U.S.C. § 1915(b)(1) and (2), regardless of the outcome of the litigation, meaning that if the Court dismisses the case as a result of its *sua sponte* screening, or Plaintiff's case is otherwise administratively terminated or closed, § 1915 does not suspend installment payments of the filing fee or permit refund to the prisoner of the filing fee, or any part of it, that has already been paid; and it is further

**ORDERED** that pursuant to *Bruce v. Samuels*, 136 S. Ct. 627, 632 (2016), if Plaintiff owes fees for more than one court case, whether to a district or appellate court, under the Prison Litigation Reform Act (PLRA) provision governing the mandatory recoupment of filing fees, Plaintiff's monthly income is subject to a simultaneous, cumulative 20% deduction for each case a court has mandated a deduction under the PLRA; *i.e.*, Plaintiff would be subject to a 40% deduction if there are two such cases, a 60% deduction if there are three such cases, etc., until all fees have been paid in full; and it is further

**ORDERED** that pursuant to 28 U.S.C. § 1915(b)(2), in each month that the amount in Plaintiff's account exceeds $10.00, the agency having custody of Plaintiff shall assess, deduct from Plaintiff's account, and forward to the Clerk of the Court payment equal to 20% of the preceding month's income credited to Plaintiff's account, in accordance with *Bruce*, until the $350.00 filing fee is paid. Each payment shall reference the civil docket numbers of the actions to which the payment should be credited; and it is further

**ORDERED** that the Complaint is dismissed in its entirety pursuant to 28 U.S.C. 1915(e)(2)(B) for failure to state a claim for relief; and it is further

**ORDERED** that the § 1983 claims are dismissed WITH PREJUDICE as to MCCC; and it is further

**ORDERED** that the § 1983 claims against Warden Charles Ellis, Brian Hughes, the County of Mercer, CFG, and CFG medical staff are dismissed WITHOUT PREJUDICE; and it is further

**ORDERED** that Plaintiff may submit an Amended Complaint and move to reopen this matter within 45 days of the date of this Memorandum and Order to the extent he can cure the deficiencies in his Complaint; and it is further

**ORDERED** that if Plaintiff fails to submit an Amended Complaint within 45 days, this dismissal will automatically convert to a dismissal with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Memorandum and Order to Plaintiff at the address on file and CLOSE this matter accordingly.

<u>s/Freda L. Wolfson</u>
Freda L. Wolfson
U.S. Chief District Judge